UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SOCORRO CABALLERO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No.  2:12-cv-2357-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from December 31, 2008, plaintiff's alleged disability onset date, through the date of the final administrative decision.  (ECF No. 18.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 21.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 22.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 10, 13.)

1

1   For the reasons that follow, the court grants plaintiff's motion for summary judgment in
2   part, denies the Commissioner's cross-motion for summary judgment, and remands the case for
3   further proceedings under sentence four of 42 U.S.C. § 405(g).

4   I.   BACKGROUND

5   Plaintiff was born on November 15, 1957 in Mexico, obtained a ninth grade education in
6   Mexico, and previously worked as a school cafeteria server, production packager, and clerical
7   assistant.[2]  (Administrative Transcript ("AT") 53, 203-07.)  On November 20, 2009, plaintiff
8   applied for DIB, alleging that she was unable to work as of December 31, 2008, due to a
9   cognitive impairment that caused plaintiff difficulties with memory, concentration, and anxiety.
10  (AT 34, 58-59, 163-67.)  On March 3, 2010, the Commissioner determined that plaintiff was not
11  disabled.  (AT 86.)  Upon plaintiff's request for reconsideration, the determination was affirmed
12  on August 13, 2010.  (AT 91.)  Thereafter, plaintiff requested a hearing before an administrative
13  law judge ("ALJ"), which took place on March 2, 2011, and at which plaintiff (represented by
14  counsel) testified.  (AT 49-83, 96-97.)

15  In a decision dated March 21, 2011, the ALJ determined that plaintiff had not been under
16  a disability, as defined in the Act, from December 31, 2008, plaintiff's alleged onset date, through
17  the date of the ALJ's decision.  (AT 34-44.)  The ALJ's decision became the final decision of the
18  Commissioner when the Appeals Council denied plaintiff's request for review on August 17,
19  2012.  (AT 1.)  Thereafter, plaintiff filed this action in federal district court on September 13,
20  2012, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

21  II.  ISSUES PRESENTED

22  Plaintiff raises the following four issues:  (1) whether the ALJ improperly found that
23  plaintiff's impairments did not meet or equal Listing 12.05C at step two; (2) whether the ALJ
24  failed to fully and fairly develop the record; (3) whether the ALJ erred in evaluating the medical
25  opinion evidence when assessing plaintiff's RFC; and (4) whether the ALJ made an improper

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

credibility determination with respect to plaintiff's testimony.

III. <u>LEGAL STANDARD</u>

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007) (quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. <u>DISCUSSION</u>

    A. <u>Summary of the ALJ's Findings</u>

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

engaged in substantial gainful activity since December 31, 2008, plaintiff's alleged onset date. (AT 36.) At step two, the ALJ determined that plaintiff had the following severe impairments: "mild cognitive impairment and adjustment disorder." (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant retains the abilities to engage in simple, one to two-step instruction work not involving heights, or unguarded machinery. She should not engage in fast-paced work, such as working on an assembly line or where there are production quotas.

(AT 39.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 42.) Finally, at step five, the ALJ determined, in reliance on the Vocational Expert's testimony, that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, including the representative occupations of photocopy machine operator and addresser. (AT 43.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from December 31, 2008, through the date of the ALJ's decision.

////

---

> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

        1. Whether the ALJ Erred in Finding that Plaintiff's Impairments Did Not Meet Listing 12.05C

At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." Id. (citing 20 C.F.R. § 404.1525). If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. Tackett, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1520(d)).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. Tackett, 180 F.3d at 1099 ("[Claimant] had to establish that he [or she] met or equaled each of the following characteristics of a listing."). "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

In the present case, the ALJ concluded at step three that plaintiff "does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AT 36.) In particular, the ALJ considered plaintiff's impairments, both singly and in combination, in light of the criteria set out in listings 12.02, 12.04, and 12.05 and determined that plaintiff's impairments did not meet or medically equal the criteria of any of these listings. (AT 36-39.) Plaintiff argues that the ALJ erred in his conclusion that plaintiff's impairments did not meet or equal the criteria set out in listing 12.05C. (ECF No. 18 at 6-13.) For the reasons stated below, plaintiff's argument is well-taken.

In order to show that plaintiff's mental impairments met listing-level severity under Listing 12.05 (intellectual disability), plaintiff must show that she suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning" and that the evidence shows that the onset of this impairment occurred prior to age 22. 20 C.F.R. pt. 404,

5

subpt. P, app. 1, § 12.05. Plaintiff may be able to show the required level of severity for purposes of Listing 12.05 by showing that the requirements set out in Subparts A, B, C, or D are satisfied. (Id.) Here, plaintiff argues that the evidence shows that she satisfied the criteria set out in Subpart C of Listing 12.05. (ECF No. 18 at 6.)

Paragraph C of Listing 12.05 states that plaintiff can show that her impairment meets listing-level severity when the evidence demonstrates the following: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. The Listing continues: "For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are 'severe' as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes 'an additional and significant work-related limitation of function,' even if you are unable to do your past work because of the unique features of that work." Id. Thus, a plaintiff meets the Listing's requirements if she: (1) has an IQ score between 60 and 70 and the evidence demonstrates or supports onset of the impairment before age 22; and (2) she has a physical or other mental impairment imposing an additional and significant work-related limitation of function (i.e., a "severe" impairment).

In determining that plaintiff's impairments did not meet the criteria of Listing 12.05C, the ALJ stated the following:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As cited above, the claimant obtained IQ scores that show she is on the borderline with meeting 12.05(C) IQ score requirements. The evidence of record and opinions of treating and examining sources weigh in favor of a finding that the claimant does not meet or equal listing 12.05(C). An examining source administered the Wechsler Adult Intelligence Scales in October 2008, but he did not report any IQ scores; his diagnostic impression was a mild cognitive disorder. A treating source continued to asses a mild cognitive disorder in December 2009, and again in July 2010.

6

(AT 39 (internal citations omitted).)

### a. The ALJ Erred in Finding that Plaintiff did not Meet Listing 12.05C on the Basis that Plaintiff's IQ Scores Were Merely "Borderline" in Meeting the Listing's IQ Score Requirement

On May 2, 2005, prior to plaintiff's alleged onset date, plaintiff took a psychometric test, the results of which showed plaintiff to have a full scale IQ of 70, a verbal IQ of 72, and a performance IQ of 73.[4] (AT 304.) Wendy McCray, Ph.D, the examining source who administered the psychometric test in connection with a prior application by plaintiff for benefits under Title II of the Act, found that plaintiff's results "should be interpreted with caution and may underestimate [plaintiff's] abilities due to education and acculturation factors." (AT 302.) Nevertheless, Dr. McCray opined that plaintiff "appears to present with a pattern of performance consistent with her self-report, and is likely experiencing symptoms consistent with a cognitive disorder." (Id.)

Plaintiff took another psychometric test, administered by April Young, Ph.D, an examining source, on February 8, 2010, after the alleged onset date, which revealed plaintiff to have a full scale IQ of 64, a verbal IQ of 66, and a performance IQ of 67.[5] (AT 356.) Dr. Young opined that plaintiff's psychometric test results constituted "a reasonably accurate representation of [plaintiff's] functioning." (AT 353.)

The ALJ erred in determining that these IQ scores showed that plaintiff was "on the borderline with meeting 12.05(C) IQ score requirements" and in ultimately determining that plaintiff did not meet the first prong of Listing 12.05C. Under the Commissioner's regulations, it is irrelevant that plaintiff's verbal and performance IQ scores on the test administered by Dr. McCray exceeded 70. See 20 C.F.R. § 404, subpt. P, app. I, § 12.00D.6.c ("In cases where more

---

[4] Dr. McCray utilized the Wechsler Adult Intelligence Scale – Third Edition ("WAIS-III") to determine plaintiff's IQ scores. (AT 301, 304.) The IQ score ranges stated in Listing 12.05 "reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15," which includes the IQ tests based on the Wechsler series. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D.6.c.

[5] Dr. Young also utilized the WAIS-III to determine plaintiff's IQ scores. (AT 352, 356.)

7

than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full-scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."); Garrett v. Astrue, 2008 WL 4350374, at *4, n.4 (C.D. Cal. Sept. 19, 2008) ("Under the Commissioner's regulations, it is irrelevant that Plaintiff's scores on the other portions of the Wechsler test exceeded 70."). Furthermore, "[t]he Commissioner's regulations . . . expressly base Listing 12.05C on IQ tests [sic] scores within a particular, fixed numerical range, i.e., 60 through 70, regardless of any range of accuracy that may apply to such scores." Garrett, 2008 WL 4350374, at *5. Accordingly, plaintiff's full scale IQ scores under both the test administered by Dr. McCray (a score of 70) and the test administered by Dr. Young (a score of 64) are within the specific IQ range necessary to meet Listing 12.05C's first prong. The ALJ's discounting of these scores because they were "borderline" was in error because both scores fell within the IQ range required to meet Listing 12.05C.

### b. The ALJ Erred in Determining that Plaintiff's IQ Scores Were Not "Valid" Based on the Evidence of Record and Opinions of Plaintiff's Treating and Examining Sources

The ALJ committed further error by determining that plaintiff's IQ scores were not valid based on the ALJ's finding that "[t]he evidence of record and opinions of treating and examining sources weigh in favor of a finding that [plaintiff] does not meet or equal listing 12.05(C)." (AT 39.) The Ninth Circuit Court of Appeals has not delineated what evidence an ALJ should consider in assessing whether IQ scores are "valid."[6] However, district courts within the Ninth Circuit have addressed what evidence an ALJ may consider in assessing the validity of IQ scores. E.g., Wedge v. Astrue, 624 F.Supp.2d 1127, 1131-35 (C.D. Cal. 2008) (summarizing considerations from out-of-circuit cases, such as whether the evidence shows a high possibility of

---

[6] In an unpublished opinion, the Court of Appeals noted that while it has no doubt that an ALJ could find IQ scores invalid, it has never delineated what factors an ALJ should consider in making such a determination. Thresher v. Astrue, 283 Fed. App'x 473, 475 (9th Cir. 2008). Although Thresher is an unpublished decision and thus only of persuasive value, it is cited herein pursuant to Ninth Circuit Rule 36-3, which provides that "Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."

malingering, daily activities inconsistent with the IQ scores, inconsistencies between test results, and conflicting medical opinions); Vasquez v. Astrue, 2012 WL 590019, at *6-*7 (C.D. Cal. Feb. 21, 2012) (unpublished) (same).

In support of the finding that plaintiff's IQ scores did not validly show that plaintiff met Listing 12.05C's IQ requirement, the ALJ specifically noted the findings of examining neuropsychologist, David D. O'Grady, Ph.D., who examined plaintiff in October 2008, and the medical records produced by one of plaintiff's treating neurologist, M.A. Gonzalez, M.D., in December 2009 and July 2010. (AT 39.) Based on these statements, it appears that the ALJ reasoned that plaintiff's IQ test results in the record conflicted with the opinions and test results of Dr. O'Grady and Dr. Gonzalez. However, a closer examination of the records produced by these two medical sources reveals that they do not substantially support the ALJ's conclusion that plaintiff's IQ scores were invalid or otherwise failed to show that plaintiff fell within the IQ range necessary to meet the IQ requirement of Listing 12.05C.

With respect to Dr. O'Grady's examination, the ALJ noted that while Dr. O'Grady "did not report any IQ scores; his diagnostic impression was a mild cognitive disorder." (AT 39.) However, while Dr. O'Grady opined that "[n]eurocognitive testing reveals generally mild cognitive deficits affecting multiple domains of cognitive functioning," the results from the WAIS-III and other tests that Dr. O'Grady performed are similar to those found by the same tests conducted by Dr. McCray in 2005, which Dr. McCray had used to determine that plaintiff had a full scale IQ of 70. (compare AT 304 with AT 310.) More importantly, Dr. O'Grady's examination occurred almost a year and a half prior to Dr. Young's examination. Dr. Young expressly stated in her report that she reviewed Dr. O'Grady's examination report and took it into consideration in developing her own evaluation of plaintiff. (AT 351, 354.) Furthermore, similar to Dr. O'Grady and Dr. McCray, Dr. Young utilized testing based on WAIS-III as part of her examination, which ultimately resulted in plaintiff receiving a full scale IQ score of 64. (AT 356.) There is nothing in Dr. O'Grady's report indicating that his medical findings differed so greatly from those of either Dr. McCray or Dr. Young that it would constitute substantial evidence in support of the ALJ's finding that plaintiff did not possess "valid" IQ scores showing

that she fell within the IQ range delineated by Listing 12.05C.

Similarly, Dr. Gonzalez's progress notes from December 2009 and July 2010 do not constitute substantial evidence in support of the ALJ's determination. Dr. Gonzalez agreed with Dr. O'Grady's assessment that plaintiff suffered from a mild cognitive disorder affecting multiple spheres. She also noted in July 2010 that plaintiff's cognitive dysfunction was "progressive" and wrote a letter "in full support" of plaintiff's application for benefits under the Act. (AT 395, 408.) At no time since she began treating plaintiff in September 2008 did Dr. Gonzalez proffer an opinion that contradicted any of the examining sources' assessments of plaintiff's IQ and mental capacity. Accordingly, the ALJ's reliance on Dr. Gonzalez's treatment records to find that plaintiff did not have a valid IQ score within the range required to meet Listing 12.05C's IQ requirement was misplaced.

Because there was no substantial evidence in the record to support the ALJ's reasons for finding that plaintiff did not have a valid IQ score that satisfied Listing 12.05C, the ALJ's determination that plaintiff did not meet the first prong of Listing 12.05C's requirements was in error.

### c. The ALJ Erred in Finding that Plaintiff did not have a Physical or Other Mental Impairment Imposing an Additional and Significant Work-related Limitation of Function

As for the second prong of the Listing, the ALJ found that plaintiff had "severe impairments" consisting of "mild cognitive impairment and adjustment disorder" (AT 36.) By definition, a "severe" impairment significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c) (defining a "severe impairment" as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"). Here, the ALJ found that plaintiff had a sufficiently severe "adjustment disorder" in addition to plaintiff's cognitive impairment. (AT 36.)

Where the ALJ finds that plaintiff has a "severe" impairment at Step Two, this equates to a finding that the plaintiff meets the second prong of the Listing. See, e.g., Rowens v. Astrue, 2010 WL 3036478, at *2-*4 (E.D. Cal. Aug.2, 2010) (unpublished) ("[I]n this circuit, a person

10

who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of the § 12.05(c) listing."); Rhein v. Astrue, 2010 WL 4877796, at * 10 (E.D. Cal. Nov. 23, 2010) ("a step two finding of a severe impairment necessarily determines that the second prong is satisfied."); Woods v. Astrue, 2012 WL 761720, at *4 (E.D. Cal. Mar. 7, 2012) (finding that the plaintiff met the Listing's second prong given the ALJ's finding that plaintiff had "severe" impairments at Step 2). According to the ALJ's own Step 2 finding that plaintiff has a "severe" impairment (AT 36), plaintiff meets the second criteria for the Listing. Therefore, the ALJ erred by determining that plaintiff did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." (AT 36.)

   d. <u>Because the ALJ Erred in Analyzing Whether Plaintiff's Mental Impairment Met the Requirements of Paragraph C of Listing 12.05, the ALJ's Failure to Consider Whether Plaintiff's Mental Condition Manifested Itself Prior to Plaintiff's Twenty-Second Birthday Warrants Remand</u>

Defendant argues in its cross-motion for summary judgment that the ALJ properly found that plaintiff did not meet Listing 12.05C because plaintiff has not made a showing that her IQ fell into the required range prior to age twenty-two. (ECF No. 21 at 8.) In response to defendant's argument that plaintiff failed to meet her burden of production, plaintiff argues that her valid adult IQ scores trigger a rebuttable presumption that the impairment existed before the age of 22. (ECF No. 22 at 2-3 (citing out-of-circuit cases).) Plaintiff's argument is well-taken.

The Ninth Circuit Court of Appeals has not addressed the rebuttable presumption that plaintiff urges, but several other circuits have addressed the issue. See Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (IQ scores after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life") (citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001); Luckey v. U.S. Dept. Of Health and Human Services, 890 F.2d 666, 668 (4th Cir. 1989)). Further, district courts within the Ninth Circuit have applied the rebuttable presumption regarding onset of mental limitations prior to age 22. Compare, e.g.,

11

1  Flores v. Astrue, 2013 WL 146190, at *4-*5 (C.D. Cal. Jan.11, 2013) (unpublished) (collecting
2  cases and adopting rebuttable presumption); Woods, 2012 WL 761720, at *3-*4 (adopting
3  rebuttable presumption and finding that "[a]bsent some evidence of a change in cognitive ability
4  or some other persuasive information to account for a change in condition relating to the
5  plaintiff's ability prior to age 22 and the date of the IQ testing, there appears to be no factual basis
6  for concluding that the IQ inexplicably dropped after age 22."); Forsythe v. Astrue, 2012 WL
7  217751, at *7-*9 (E.D. Cal. Jan. 24, 2012) (unpublished) (collecting cases and adopting
8  presumption); Schuler v. Astrue, 2010 WL 1443892, at *6 (C.D. Cal. Apr.7, 2010) (unpublished)
9  ("a valid qualifying IQ score obtained by the claimant after the age of 22 creates a rebuttable
10 presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed
11 that IQ scores remain relatively constant during a person's lifetime."); Jackson v. Astrue, 2008
12 WL 5210668, at *6-*7 (C.D. Cal. Dec.11, 2008) (unpublished) ("several circuits have held that
13 valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life .
14 . . The Court finds the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive.");
15 with Clark v. Astrue, 2012 WL 423635, at *5-*6 (E.D. Cal. Feb.8, 2012) (unpublished) (declining
16 to adopt rebuttable presumption, "especially in a situation where there are glaring discrepancies in
17 the IQ scores in the first place"); Rhein, 2010 WL 4877796, at *8 (declining to adopt rebuttable
18 presumption on grounds it would remove plaintiff's burden at Step Three).
19     The undersigned has previously found those cases applying the rebuttable presumption
20 persuasive, see Vieira v. Colvin, 2013 WL 1195287, at *6-*7 (E.D. Cal. Mar. 22, 2013), and
21 finds that the presumption is applicable to plaintiff's IQ scores here.  Accordingly, applying the
22 rebuttable presumption analysis, the next question is whether the presumption arising from
23 plaintiff's valid IQ scores is rebutted by the evidence in the record; that is, whether the evidence
24 in the record shows that the onset of plaintiff's impairment was actually after age 22.  See, e.g.,
25 Woods, 2012 WL 761720 at *3-*4.
26     Here, there is nothing in the record indicating plaintiff's IQ score prior to the age of 22.
27 However, "a claimant is not required to produce an IQ score prior to age 22 in order to meet the
28 listing."  Levi v. Colvin, 2014 WL 1289791, at *4 (E.D. Cal. Mar. 31, 2014) (citing Gomez v.

Astrue, 695 F.Supp.2d 1049, 1061 (C.D. Cal. 2010)).  The language of the Listing 12.05 supports the use of circumstantial evidence, acquired after the end of a claimant's developmental period, to satisfy the diagnostic requirements of the Listing.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 ("[T]he evidence demonstrates or supports onset of the impairment before age 22.") (emphasis added).[7]  District courts have found that circumstantial evidence can indicate a deficit in adaptive functioning prior to the age of 22.  E.g., Forsythe, 2012 WL 217751, at *7-*9 (unpublished) (collecting cases.)  Examples of such circumstantial evidence includes attendance in special education classes, dropping out of school prior to graduation, difficulties in reading, writing or math, and low-skilled work history.  See, e.g., Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007); Gomez, 695 F.Supp.2d at 1059-60 (plaintiff dropped out of high school and had academic performance difficulties since elementary school); Campbell v. Astrue, 2011 WL 444783, at *17-*18 (E.D. Cal. Feb. 8, 2011) (unpublished) (plaintiff earned mostly Ds and Fs, dropped out of high school, and did not earn a GED, all amounting to circumstantial evidence of a deficit in adaptive functioning prior to age 22); Woods, 2012 WL 761720 at *3-*4 (holding that plaintiff's ability to obtain his GED after age 22 had a "tenuous relevance to plaintiff's intellectual functioning before age 22").

Defendant argues that the evidence in the record here suggests that plaintiff's impairment did not manifest itself until after plaintiff turned 22.  (ECF No. 21 at 7.)  In particular, defendant cites to plaintiff's testimony stating that she began to notice her cognitive problems sometime around 2000 or 2002, when she would have been approximately between the ages of 42 and 44.  (ECF No. 21 at 7; AT 62, 163.)  Defendant also notes that the record reflects that plaintiff worked

---

[7] Indeed, in revising the language of Listing 12.05, the Social Security Administration commented:

> The final rules clarify that *we do not necessarily require evidence from the developmental period* to establish that the impairment began before the end of the developmental period. The final rules permit us to use judgment, based on current evidence, to infer when the impairment began. This is not a change in interpretation from the prior rules.

Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (Aug. 21, 2000) (emphasis added) available at 2000 WL 1173632 at *50753.

for a number of years after she turned 22. (ECF No. 21 at 7; AT 69.) While these portions of the record do suggest that plaintiff's mental impairment did not manifest itself until after plaintiff had turned twenty-two years of age, there is other evidence in the record that suggests to the contrary. For example, plaintiff testified during the administrative hearing that she had academic problems when she attended school in Mexico, noting that her "grades were always low" and that when she had to work on projects "there was no way that [she] could put anything together." (AT 71-72.) Furthermore, other circumstantial evidence in the record indicates that plaintiff may have had significant difficulties in attempting to concentrate and complete intellectual tasks when she was working and while engaging in daily activities. (e.g., AT 58, 60-61, 63-66, 314, 318-20, 333.) When this evidence which reinforces the presumption that the IQ scores are reflective of plaintiff's intellectual function before the age of 22 is taken in conjunction with the fact that the ALJ's opinion did not in any way address the issue of whether plaintiff's intellectual impairment began prior to age of 22, the court cannot conclude based on the current record that the onset of plaintiff's impairment was actually after age 22.

For the reasons discussed above, the court cannot conclude that the ALJ's decision is based on proper legal standards and supported by substantial evidence in the record as a whole. While the record currently before the court indicates that plaintiff's impairment may not have manifested itself until after plaintiff's twenty-second birthday, the ALJ's complete failure to address this issue, the rebuttable presumption created by plaintiff's adult IQ scores, and the existence of some evidence in the record supporting that presumption keeps the court from concluding at this time that the ALJ's errors were harmless.

Nevertheless, the court declines to remand the action for payment of benefits, because such an award is only appropriate where "no useful purpose would be served by further administrative proceedings," "the record has been thoroughly developed," and "there are no outstanding issues that must be resolved before a proper disability determination can be made." Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399, 1401 (9th Cir. 1988). With the existence of at least some relevant evidence in the record indicating that plaintiff's impairment may not have manifested itself until after the age of 22, an immediate award of benefits is not

warranted.

In this case, the issue of whether the onset of plaintiff's mental impairment occurred prior to age 22 is better resolved in the course of further administrative proceedings. For the reasons discussed above, it is not clear whether the ALJ would be required to find plaintiff disabled had the ALJ properly applied Listing 12.05C. Thus, the court remands this matter for further administrative proceedings and, if feasible, further development of the record with regard to whether plaintiff's mental impairment manifested itself prior to plaintiff reaching the age of 22.

On remand, the ALJ is also free to develop the record in other respects, if deemed appropriate. Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed upon remand within the confines of the applicable law.

### 2. Other Issues

In light of the court's conclusion that the case must be remanded for further analysis and record development regarding whether plaintiff's impairment met or equaled Listing 12.05C, the court declines to reach the remaining issues. On remand, the ALJ will have an opportunity to further consider and address the medical opinions in the record and plaintiff's testimony in context of the record as a whole.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is DENIED.

3. The action is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

IT IS SO ORDERED.

Dated: August 20, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE